IN THE UNITED STATES DISTRICT COURT,
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RACHEL DOMBROWSKI, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 11-1278 |
| | : | |
| v. | : | |
| | : | |
| GOVERNOR MIFFLIN SCHOOL | : | |
| DISTRICT, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**JONES, II, U.S.D.J.**                                                                                    **June 29, 2012**


### <u>MEMORANDUM</u>

Before the Court is the Motion of Defendant Governor Mifflin School District

("GMSD") to Dismiss Portions of Plaintiff's Amended Complaint and to Strike Portions Thereof

(Docket No. 36); Plaintiff Rachel Dombrowski's ("Plaintiff") Answer (Docket No. 38); and

GMSD's Reply (Docket No. 43).

**I.        Introduction**

Plaintiff brings four claims against GMSD arising from actions allegedly taken by

GMSD while Plaintiff was in its employ.[1]  Count One claims retaliation in violation of Title VII

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3.  Count Two is a hostile work

environment claim in violation of Title VII, 42 U.S.C. § 2000e-2(a).  Count Three contains

---

[1] Before filing this suit, Plaintiff filed two complaints of employment discrimination with
the U.S. Equal Employment Opportunity Commission and Pennsylvania Human Relations
Commission ("PHRC"). The U.S. Department of Justice, Civil Rights Division, issued a Notice
of Right to Sue on January 25, 2010.  <u>Id.</u> ¶ 8.

claims for violation of federal and state rights to privacy.  Count Four is a claim for violations of due process.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), GMSD moves to dismiss all of Plaintiff's claims except for a portion of Count One.  In addition, pursuant to Federal Rule of Civil Procedure 12(f)(2), GMSD moves to strike Paragraphs 16, 17, 18, 19, 20, 21, 25, 68, 69, and 115 of the Amended Complaint on the grounds that they are redundant, immaterial, impertinent, or scandalous.  For the reasons that follow, I will grant the Motion in part and deny it in part.

## II.    Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).  After the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556).  This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678; accord Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks

omitted).

Federal Rule of Civil Procedure 12(f) permits the court, on its own motion, or on the timely motion of a party, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." FED. R. CIV. P. 12(f).  "Immaterial matter is that which has no essential or important relationship to the claim for relief. . . . A scandalous matter or pleading is one that casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court."  Conklin v. Anthou, No. 10–2501, 2011 WL 1303299, at *1 (M.D. Pa. Apr. 5, 2011) (citations and internal quotation marks omitted).  "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters."  Natale v. Winthrop Res. Corp., No. 07-4686, 2008 WL 2758238, at *14 (E.D. Pa. July 9, 2008) (internal quotation marks omitted).  While a court "possesses considerable discretion in disposing of a motion to strike under Rule 12(f), such motions are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case."  Id. (internal quotation marks omitted) (citing River Rd. Devel. Corp. v. Carlson Corp., Civ. A. No. 89-7037, 1990 WL 69085, at *2 (E.D. Pa. May 23, 1990)). Striking part of a pleading is considered a "drastic remedy to be resorted to only when required for the purposes of justice."  Id. (internal quotation marks omitted) (citing DeLa Cruz v. Piccari Press, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007)).

**III.    Factual Allegations**

For the purpose of deciding the instant Motion, I must assume all alleged facts are true.  See Phillips, 515 F.3d at 233.  Plaintiff alleges the following facts in the Amended

Complaint.[2]

GMSD hired Plaintiff as Assistant Director of Technology in August 2004, and it promoted her to Director of Technology in August 2006.  Am. Compl. ¶¶ 9–10.  GMSD hired Andrea Coleman-Hill as a school principal in December 2005.  Id. ¶ 11.  At that time, Coleman-Hill was the only African-American principal in the district.  Id. ¶ 12.  Plaintiff avers that, during Coleman-Hill's employment as principal, School Superintendent Mary T. Weiss ("Weiss") made disparaging comments based on race about Coleman-Hill and expressed a desire to remove Coleman-Hill from her position.  Id. ¶¶ 16–20.

Plaintiff began having increasing interactions with Coleman-Hill during the 2006–07 academic year.  Id. ¶ 23.  Plaintiff avers that during this time she began to realize that Coleman-Hill "was not a terrible person," and Plaintiff concluded that Weiss harbored a "racist attitude" toward Coleman-Hill.  Id.  ¶¶ 24, 29.  Plaintiff alleges that she voiced her displeasure to Weiss about said attitude.  Id. ¶ 30.  Plaintiff claims Weiss told her that it would be best to "stay away" from Coleman-Hill.  Id.  ¶ 35.  Weiss began "keeping her distance" from Plaintiff in 2007, and at that time became increasingly critical of Plaintiff's conduct.  Id. ¶ 37.  In October 2009, Weiss "wrote [Plaintiff] up" for improperly disciplining a teacher, and issued Plaintiff a formal reprimand.  Id. ¶¶ 38–42, 52.  Plaintiff alleges that (1) the conduct at issue was not improper, and (2) she had the support of the implicated teacher, that teacher's union representative, and Assistant School Superintendent Daniel G. Bulinski ("Bulinski").  Id. ¶¶ 43–45.  In January 2010, Weiss contacted a computer service to conduct an evaluation of the Technology Department to determine if Plaintiff was improperly managing it.  Id. ¶¶ 53, 55.  Plaintiff avers

---

[2] Quotations are taken verbatim from the Amended Complaint.

that the completed IT report was "favorable" to her. Id. ¶ 60.

      Coleman-Hill brought a lawsuit against GMSD on November 19, 2009.

Coleman-Hill v. Governor Mifflin Sch. Dist., filed, No. 09-5525 (E.D. Pa. Nov. 19, 2009).

Plaintiff was deposed in that action on August 16, 2010, and at that time Plaintiff testified that

she believed Weiss "to be a racist" and that Weiss had "discriminated against Mrs. Coleman-

Hill." Id. ¶¶ 63–64. Plaintiff alleges that, approximately four days later, she was moved to a

smaller office which was located away from the offices of the other administrators with whom

she worked. Id. ¶ 66.

      On August 23, 2010, Robin Gray, Esq. ("Gray"), who is counsel for both

Coleman-Hill and Plaintiff, improperly sent Plaintiff a subpoena for any and all school-account

electronic mail from Weiss which pertained to Coleman-Hill. Id. ¶ 70; Ex. K. Plaintiff avers

that Bulinski "told her to do what she had to do" concerning the subpoena. Id. ¶¶ 75–76.

Plaintiff responded to the subpoena by sending approximately 180 of Weiss's e-mails to Gray.

Id. ¶ 71. Thereafter, Plaintiff alleges that Weiss and an attorney for GMSD told her to stop the e-

mail search. Id. ¶¶ 72, 79. Plaintiff then sent those 180 e-mails, plus additional e-mails, to the

GMSD attorney. Id. ¶ 78. Weiss and Bulinski called Plaintiff to a meeting on September 2,

2010, during which Plaintiff alleges they questioned her about which e-mails she had searched.

Id. ¶¶ 82, 85. Plaintiff asked for independent representation, but Bulinski denied the request and

told Plaintiff that she would be considered insubordinate and terminated if she did not answer

their questions. Id. ¶¶ 83–84. Plaintiff avers that she was then ordered to turn over her work

keys, school computer, and other school items, and that she was then placed on administrative

leave with pay. Id. ¶¶ 87, 89.

GMSD has an Acceptable Use Policy of Digital Technology ("Technology Policy") which governs the use of GMSD-owned property such as computers.  Id. Ex. F. Plaintiff signed an Agreement that stated that she read, understood, and would comply with the Technology Policy.  Def.'s Mot. Supp. Dismiss Pl.'s Am. Compl. (hereinafter "Def.'s Br.") Ex. C.[3]  According to Plaintiff, GMSD sent her work laptop computer to a forensic investigator on September 24, 2010, and instructed the investigator to search the computer, as well as the GMSD computer network, for e-mails from Plaintiff to Gray and Coleman-Hill. Am. Compl. ¶ 95; Ex. P.

On September 21, 2010, Plaintiff received a notice of a *Loudermill* pre-termination hearing[4] and a list of allegations, which included Plaintiff's response to Gray's subpoena and a purportedly improper PowerSchool ("PS") presentation.[5]  Id. ¶¶ 90–91.  GMSD scheduled the hearing for late September 2010, but, because of Gray's scheduling conflicts, the hearing was postponed until October 15, 2010.  Id. ¶ 99; Ex. R.  A GMSD attorney notified Gray that Plaintiff's status would change to suspension without pay from October 1, 2010, but that back pay would be possible if Plaintiff was reinstated.  Id. ¶ 99; Ex. R.  GMSD conducted the *Loudermill* hearing on October 15, 2010.  Id. ¶ 101; Ex. R.  During the hearing, Plaintiff

---

[3] In addition to the Amended Complaint, I may properly consider "an undisputedly authentic document that a defendant attaches to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

[4] The term "*Loudermill* hearing" refers to the process a government entity must provide a public servant employee prior and subsequent to terminating employment. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985).

[5] The presentation was alleged to have violated the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the Family Educational Rights and Privacy Act ("FERPA") because Plaintiff released private information about certain students therein.

answered questions about her response to Gray's subpoena and the PS presentation.  Id.  By a letter dated October 18, 2010, GMSD notified Plaintiff that it was recommending that the School District's Board ("School Board") terminate her employment.  Id. ¶ 103; Ex. T.

Subsequently, Plaintiff received charges for a School Board hearing, which she alleges included additional charges not discussed at the *Loudermill* hearing.  Id. ¶ 104.  Plaintiff then received amended charges on November 8, 2010.  Id. ¶ 106.  In response, Gray wrote to Weiss and specifically requested a public hearing.  Def.'s Br. Ex. A.[6]  The School Board conducted three public hearings, two in December 2010 and one in January 2011.  Am. Compl. ¶ 106; Ex. S, at ¶ 43.  Plaintiff alleges that the School Board "permitted into evidence attorney/client privileged documents, private emails [sic] taken from Dombrowski's personal AOL email [sic] account [and] personal GMAIL account."  Id. ¶ 110.  At the time, GMSD maintained that it had redacted any privileged content.  Id. ¶ 111.  Plaintiff alleges that privileged content was in reality not redacted, and she avers that GMSD presented altered and misleading versions of conversations between Plaintiff and Gray.  Id. ¶ 112.

The School Board decided to terminate Plaintiff after less than one hour of deliberation after the January hearing.  Id. ¶ 118.  Plaintiff alleges that, in doing so, the School Board filed findings of fact and conclusions of law that were identical to those proffered by GMSD's counsel before the hearing (with the only difference being the School Board members' signatures at the end of the document).  Id. ¶ 120.  Plaintiff maintains that the School Board had pre-determined Plaintiff's termination, and thus did not hold the hearing in good faith.  Id. ¶ 121.

---

[6] See *supra* note 3.

IV.     **Discussion - Motion to Dismiss**

A.     **Count One**

In Count One, Plaintiff brings a claim against GMSD for retaliation under Title VII of the United States Code.  GMSD asks the Court to dismiss any portion of this claim which relates to activities that occurred after Plaintiff's second Equal Employment Opportunity Commission charge ("Second EEOC Charge") was filed on October 21, 2010, because Plaintiff has not exhausted administrative remedies concerning those activities.

As a general rule, relevant administrative remedies must first be exhausted before a Title VII retaliation claim such as this can be brought in federal court.  Webb v. City of Phila., 562 F.3d 256, 262-63 (3d Cir. 2009).  However, there is an exception to this rule when "[t]he scope of a judicial complaint is not limited to the four corners of the administrative charge." Nerosa v. Storecast Merch. Corp., No. Civ.A. 02-440, 2002 WL 1998181, at *3 (E.D. Pa. Aug. 28, 2002).  The Third Circuit "has long held that post-charge filing conduct can be raised in federal court if it is reasonably related to or reasonably could be expected to grow out of the charge of discrimination."  Patsakis v. E. Orthodox Found., No. 04-1662, 2006 WL 2087513, at *7 (W.D. Pa. May 17, 2006).

The only activities involved in Plaintiff's retaliation claim that occurred after the Second EEOC Charge are the public School Board hearings held in December 2010 and January 2011.  As alleged, the School Board hearings were part of a series of connected events arising from Plaintiff's activities – events that began in 2006, continued through Plaintiff's *Loudermill* hearing in October 2010, and culminated in the January 2011 School Board hearing.  Indeed, Plaintiff specifically noted in the Second EEOC Charge that she had been recommended for

termination following the *Loudermill* hearing and there was a pending School Board hearing.  I therefore find that the School Board hearings are "reasonably related" to the other occurrences which form the subject matter of Count One of Amended Complaint.   Accordingly, Plaintiff's retaliation claim may proceed.

      **B.**    **Count Two**

      In Count Two, Plaintiff brings a hostile work environment claim against GMSD under Title VII of the United States Code.  GMSD asks the Court to dismiss this Count for failure to state a claim.  Under Title VII:

> It shall be an unlawful employment practice for an employer--
>
> (1) to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a) (2012).  The elements of a hostile work environment claim are "(1) that [the employee] suffered intentional discrimination because of her [membership in a protected class]; (2) that the discrimination was severe and pervasive; (3) that the discrimination detrimentally affected her; (4) that the discrimination would detrimentally affect a reasonable person of the same [protected class] in that position; and (5) the existence of respondeat superior liability." Davis v. City of Newark, 285 Fed. App'x 899, 902 (3d Cir. 2008).

My analysis need go no further than the first element.  Plaintiff's claim must fail because she has not alleged membership in a protected class.  At no point in the Amended Complaint does Plaintiff claim she was discriminated against because of her race, color, religion, sex, or national origin.  In fact, Plaintiff claims she was discriminated against only because of her involvement with Coleman-Hill and because she provided deposition testimony in Coleman-Hill's favor.  These allegations are more suitable for a Title VII retaliation claim, not a hostile work environment claim.[7]  I will dismiss Plaintiff's hostile work environment claim with prejudice, because further amendment would be futile.[8]

**C.     Count Three**

In Count Three, Plaintiff brings three privacy claims against GMSD.  GMSD asks the Court to dismiss Count Three in its entirety for failure to state a claim.

1.     Fourth Amendment Privacy Claim

The right to privacy extends to two types of interests: "one, an interest in avoiding disclosure of personal matters; the other, an interest in making certain kinds of important decisions."  Nat'l Aeronautics & Space Admin. v. Nelson, 131 S. Ct. 746, 755 (2011) (footnote omitted) (internal quotation marks omitted).  The latter interest generally pertains to "marriage, procreation, contraception, family relationships, and child rearing and education," Whalen v.

---

[7] Plaintiff repeatedly conflates the requirements of a retaliation claim with the elements of a hostile work environment claim.  See Pl.'s Ans. Mot. Dismiss Pl.'s [Am.] Compl. (hereinafter "Pl.'s Resp. Br.") 5-10.  Although Plaintiff is a woman, she has not claimed intentional discrimination because of her sex.  Furthermore, although Plaintiff was involved in Coleman-Hill's racial discrimination lawsuit, Plaintiff does not claim that she herself was intentionally discriminated against because of her race.

[8] Because the issues discussed, *supra*, are dispositive of this claim, I need not reach Defendant's alternate argument concerning failure to exhaust administrative remedies.

Roe, 429 U.S. 589, 600 n.26 (1977) (citing Paul v. Davis, 424 U.S. 693, 713 (1976)), which are

not at issue here.  With respect to the former interest, the Third Circuit has described it as "[t]he

right not to have intimate facts concerning one's life disclosed without one's consent."  Malleus

v. George, 641 F.3d 560, 564 (3d Cir. 2011) (citing Bartnicki v. Vopper, 200 F.3d 109, 122 (3d

Cir. 1999)). "In determining whether information is entitled to privacy protection, we have

looked at whether it is within an individual's reasonable expectation of confidentiality.  The

more intimate or personal the information, the more justified is the expectation that it will not be

subject to public scrutiny."  Id. (citing Fraternal Order of Police, Lodge No. 5 v. City of Phila.,

812 F.2d 105, 112–13 (3d Cir. 1987)).

   Plaintiff claims that GMSD violated her right to privacy when (1) it ordered an

outside forensic investigator to search Plaintiff's work computer (which Plaintiff had turned over

when she was suspended); (2) the forensic investigator produced Plaintiff's personal e-mails

(including e-mails between Plaintiff and her attorney) which were found on her computer and a

network server; and (3) it introduced many of the produced e-mails into evidence during

Plaintiff's *Loudermill* and public School Board hearings.  The Court must consider whether

Plaintiff has a reasonable expectation of privacy in e-mails (including e-mails between Plaintiff

and her counsel) that could be accessed by the forensic investigator solely by searching property

owned by GMSD.

   Courts have considered the confidentiality of e-mails and documents sent from

work computers, including e-mails between attorneys and clients.  *In re Asia Global Crossing,*

*Ltd.*, 322 B.R. 247 (Bankr. S.D.N.Y. 2005), cogently sets forth four critical factors that a court

should consider with respect to an employee's expectation of privacy in computer files and e-

mail:

(1)     [D]oes the corporation maintain a policy banning personal or other objectionable use,

(2)     does the company monitor the use of the employee's computer or e-mail,

(3)     do third parties have a right of access to the computer or e-mails, and

(4)     did the corporation notify the employee, or was the employee aware, of the use and monitoring policies?

Id. at 257 (footnote omitted); see also United States v. Nagle, No. 1:09-CR-384, 2010 WL 3896200, at *4 (M.D. Pa. Sept. 30, 2010).  The *Asia Global* court then discussed numerous federal cases from which these factors were derived.  Asia Global, 322 B.R. at 257-58.  The conclusion often turned on whether there was a company policy respecting the privacy of work computers; whether the employee was aware of the policy; and whether the company actually implemented its policy.  Id. (describing collected cases).[9]

---

[9] Rather than address GMSD's arguments directly, Plaintiff devotes almost her entire argument in response to quoting *Stengart v. Loving Care Agency, Inc.*, 973 A.2d 390 (N.J. Super. Ct. App. Div. 2009), a New Jersey appellate case dealing with a violation of a New Jersey state discrimination law.  See Pl.'s Resp. Br. 13-18.  Remarkably, Plaintiff did not even make an attempt to notify this Court that she was utilizing *one continuous five-page quotation* from the *Stengart* case, as there are *no citations or quotation marks*.  Id.  Furthermore, Plaintiff omitted a key part of the *Stengart* opinion even though she quoted the rest of the case nearly word-for-word.  Plaintiff's brief quotes *Stengart* for the proposition that "[t]here is no question that the attorney-client privilege applies to the emails [sic] and would protect them from the view of others."  Pl.'s Resp. Br. 17.  However, the *actual* quote from *Stengart* is "[t]here is no question – *absent the impact of the company's policy* – that the attorney-client privilege applies to the emails [sic] and would protect them from the view of others."  Stengart, 973 A.2d at 402 (emphasis added).  The proper quotation is, of course, in accord with the factors set forth herein and reflects the fact that a company's internal policy is crucial to the analysis.  A scan of Plaintiff's brief reveals several other misquotes and clear mischaracterizations of law.  The Court finds these drafting tactics to represent, at best, very poor judgment, and, at worst, potential violations of the applicable rules of professional conduct.  Candor to the Court is expected of all counsel *at all times*.  Pennsylvania Rule of Professional Conduct 3.3(a)(1) states that a lawyer shall not knowingly "make a false statement of material fact or law to a tribunal."  Comment 2 to this rule also states that "the lawyer must not allow the tribunal to be misled by false statements

In this instance, GMSD's Technology Policy governed the use of GMSD-owned property such as computers.  See Am. Compl. Ex. F.  The Technology Policy addressed privacy as follows:

> No employee . . . using [GMSD's] DIGITAL TECHNOLOGY shall
> have any right of privacy or expectation of privacy with respect to
> anything done with said DIGITAL TECHNOLOGY. The DIGITAL
> TECHNOLOGY belongs to, is licensed to, or is accessible through
> DIGITAL TECHNOLOGY that is owned by or licensed to [GMSD].
> [GMSD] retains all rights as an owner or licensee with respect to all
> DIGITAL TECHNOLOGY that it owns or licenses and has . . . the
> rights of an owner or licensee, INCLUDING, the rights to use, transfer,
> inspect, examine, read or store any such DIGITAL TECHNOLOGY.

Id. at 6.  The definition of "digital technology" in the Technology Policy includes computers, servers, networks, and e-mail.  Id. at 1.  Plaintiff signed an agreement which stated that she read, understood, and would comply with the Technology Policy.  Def.'s Br. Ex. C.  There is no allegation that Plaintiff was somehow unaware of the Technology Policy, nor could there be.[10]

Therefore, under the relevant factors, (1) GMSD had a privacy policy as set forth in the Technology Policy; (2) GMSD's privacy policy specifically contemplated the monitoring of employees' GMSD-owned computers and e-mail; (3) under the privacy policy GMSD had a right of access to employees' computers, including e-mail that could be found on the computers; and (4) Plaintiff was aware of the policy.[11]  As a result, I conclude that under the relevant critical

---

of law or fact . . . that the lawyer knows to be false."  This Court is deeply concerned that Ms. Gray may be unaware of these basic precepts.

[10] Plaintiff was GMSD's Director of Technology from August 2006 until January 2011. The Technology Policy included a list of responsibilities of the Director of Technology with respect to the Technology Policy, *including enforcement thereof*.  See Am. Compl. Ex. F, at 5-6.

[11] Plaintiff raises questions about how regularly GMSD "implemented" its privacy policy, presumably via enforcement activities.  Such questions implicate the fourth factor – i.e., whether

factors, Plaintiff did not have a sufficient, reasonable expectation of privacy in the subject material to claim a violation of the right to privacy under federal law.[12]  See, e.g., Muick v. Glenayre Electronics, 280 F.3d 741, 743 (7th Cir. 2002); United States v. Simons, 206 F.3d 392, 398 (4th Cir. 2000); Nagle, 2010 WL 3896200, at *4-5.  Accordingly, I will dismiss this claim with prejudice.

        2.       Claim under 22 Pa. Code § 233.114(c)–(d)

     Chapter 22, Section 233.114 of the Pennsylvania Code does not apply to school districts; rather, it deals with proceedings before the Pennsylvania Professional Standards and Practices Commission.  It is thus inapplicable in this case.[13]  Accordingly, I will dismiss this claim with prejudice.

        3.       Fourth Amendment Search and Seizure Claim

     Plaintiff claims that GMSD improperly searched and seized her e-mails.  The Fourth Amendment protects against unreasonable government searches and seizures, and extends

---

the employee was aware of the policy.  The purpose of this factor is to address situations where there may have been a policy, but employees might not know about it or believe it had been implemented.  Here, Plaintiff's role as Director of Technology – in which she was directly responsible for enforcing the policy – mitigates any such concern.  Plaintiff cannot plausibly maintain that she was unaware of the existence or implementation of a policy for which she personally supervised implementation and enforcement over a course of years.

    [12] This conclusion is buttressed by the fact that Plaintiff demanded a public hearing rather than a private hearing.  Plaintiff knew – from the investigation and *Loudermill* hearing – that the produced e-mails were highly relevant to the subject matter of the School Board hearings, but Plaintiff nonetheless chose to demand a public forum.  This suggests that Plaintiff either deliberately waived any privacy rights that might be implicated by the use of the e-mails, or was willfully blind to the implications of the School Board hearings on her privacy.  Plaintiff cannot have it both ways and advance a claim that arises, at least in part, from her own choices.

    [13] Even if it were applicable, a violation of a state regulation could not form the basis for a constitutional violation.  See Doe v. Delie, 257 F.3d 309, 318-19 (3d Cir. 2001).

such protection to communications where a person has a legitimate and reasonable expectation of privacy.  See Katz v. United States, 389 U.S. 347, 351-52 (1967); Free Speech Coal., Inc, v. Att'y Gen. Of the U.S., 677 F.3d 519, 543 (3d Cir. 2012).  Thus, a valid claim for improper search and seizure must have as its predicate a reasonable expectation of privacy.  See Smith v. Maryland, 442 U.S. 735, 740 (1979); Free Speech Coal., 677 F.3d at 543.  Plaintiff's claim is factually premised upon the search and seizure of e-mails contained on a GMSD-owned computer and stored within a GMSD-owned computer network.  In other words, the locations searched and items seized were owned and maintained by GMSD.  Because there is no credible allegation that GMSD searched or seized anything owned by Plaintiff (or even "personal" to her in a more general sense such that there could be an expectation of privacy (e.g., a personal, non-work e-mail account)), Plaintiff fails to allege that GMSD searched or seized anything that did not already belong to it.[14]  Moreover, even if something searched did not "belong" to GMSD, based on Plaintiff's knowledge and job experience, her claimed expectation of privacy in the searched media would be unreasonable.  This claim must therefore be dismissed with prejudice.

I also note that, although not obvious, Plaintiff apparently believes that buried within Count Three is a claim against GMSD for deprivation of an unidentified liberty interest. More specifically, it appears Plaintiff claims that GMSD deprived her of a liberty interest in her

---

[14] At points in both the Amended Complaint and Reply Brief, Plaintiff avers that (1) GMSD ordered the forensic investigator to hack into Plaintiff's e-mail accounts, and (2) the forensic investigator extracted Plaintiff's personal e-mail passwords.  See Am. Compl. ¶¶ 141-42, 144, 147; Pl.'s Resp. Br. 19-20.  However, these allegations are insufficient because they are *directly contradicted* by the deposition testimony of one of the forensic investigators which Plaintiff *attached to her own Amended Complaint* (and is therefore properly considered by this Court at this juncture).  The testimony states the forensic team was instructed only to search for data stored on the hard drive and not to go into any personal accounts.  Am. Compl. Ex. P, at 71-72.  Plaintiff's pleading as to this issue is fundamentally flawed.

reputation.  Although an individual has a liberty interest in her reputation, "reputation alone is not an interest protected by the Due Process Clause."  Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006) (emphasis omitted) (citing Versarge v. Twp. of Clinton, N.J., 984 F.2d 1359, 1371 (3d Cir. 1993)).  In Hill, the Third Circuit Court of Appeals instead set forth a "stigma-plus" test in connection with a public employee's liberty interest in reputation.  Id. "[T]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest."  Id. at 236.  To satisfy the "stigma" prong, the alleged stigmatizing statements must be made publicly and be false; termination of employment where there is no state-law created property interest satisfies the "plus" prong.  Id. at 236-37.  However, an additional requirement is that Plaintiff must allege she was denied a name-clearing hearing.  Greene v. Street, No. 10–4529, 2011 WL 2517144, at *4 (E.D. Pa. June 22, 2011).  Specifically, the "employee must plead . . . that [s]he timely requested a name-clearing hearing and that the request was denied."  Id. (citing Schlichter v. Limerick Twp., No. CIV.A.04-CV-4229, 2005 WL 984197, at *8 (E.D. Pa. Apr. 26, 2005)).[15] Here, Plaintiff was not denied a requested name-clearing hearing.[16]  Accordingly, I will dismiss

---

[15] The Greene court considered whether Hill eliminated the requirement of a name-clearing hearing, but concluded that, because Hill did not explicitly address the subject, the Greene court would "follow[ ] the long-standing rule of the Eastern District of Pennsylvania and find[ ] that a name-clearing hearing must be requested prior to bringing a liberty interest claim." Greene, 2011 WL 2517144, at *5.

[16] To be clear, if Plaintiff is asserting that the purportedly stigmatizing statements were made at the October 15, 2010, Loudermill hearing, then her liberty interest claim fails both because the statements were not made publicly at the time uttered, and because Plaintiff explicitly requested and was provided public name-clearing hearings in the form of the December 2010 and January 2011 School Board hearings.  If, rather, Plaintiff is asserting that the purportedly stigmatizing statements were made at the public School Board meetings, then Plaintiff's liberty interest claim fails because she did not thereafter request another name-clearing

this claim with prejudice, as amendment would be futile.

**D.    Count Four**

Plaintiff brings Count Four against GMSD for violation of her right to due process under the Fourteenth Amendment, Pennsylvania School Code, and Pennsylvania Administrative Code.  Public employees who may be dismissed only for cause have a property interest in their continued employment.  Gilbert v. Homar, 520 U.S. 924, 928-29 (1997).  I address Plaintiff's confusingly-worded claims against GMSD as follows.

1.    Claim for "failing to follow the Pennsylvania School Code in providing notices of discipline and administrative leave"

Plaintiff does not indicate what part of the School Code has purportedly been violated.[17]  This claim will be dismissed.

2.    Claim for "terminating Plaintiff for following [22] Pa. Code 233.114(h)"

As discussed, *supra*, the referenced portion of the Pennsylvania School Code deals with proceedings before the Professional Standards and Practices Commission, and is therefore inapplicable to this case.   Accordingly, I will dismiss this claim with prejudice.

---

hearing.  See 24 P.S. § 11-1126.

[17] Plaintiff is possibly referring to 24 P.S. § 11-1127, which deals with notice.  However, it is not the Court's role to divine unexplained legal claims brought by a plaintiff represented by counsel, or assist in the drafting of a cogent complaint or brief.  "Judges are not like pigs, hunting for truffles . . . ."  Lee v. Lindsey, No. 4:06-CV-1824, 2009 WL 1076390, at *2 n.2 (M.D. Pa. Apr. 21, 2009) (citing Doeblers' Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812, 820 n.8 (3d Cir. 2006)).

3.    Claims for "terminating [Plaintiff] without a proper hearing"; "stripping

Plaintiff of all of her responsibilities without investigation or hearing";

"permitting inadmissible evidence into a hearing"; and "making the

decision to terminate without following any procedure or applying any law

to the facts of the case as presented"

As a public employee with a property interest in her job, Plaintiff was entitled to a

limited pre-termination hearing followed by a more comprehensive post-termination hearing

under *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). Gilbert v. Homar, 520

U.S. 924, 929 (1997). The pre-termination hearing need not be elaborate; the employee merely

"is entitled to 'oral or written notice of the charges against [her], an explanation of the

employer's evidence, and an opportunity to present [her] side of the story.'" Koltonuk v.

Borough of Laureldale, 443 F. Supp. 2d 685, 693 (E.D. Pa. 2006) (quoting Loudermill, 470 U.S.

at 546). "In order to state a claim for failure to provide due process, a plaintiff must have taken

advantage of the processes that are available to him or her, unless those processes are unavailable

or patently inadequate." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).

Here, Plaintiff was provided both a pre-termination hearing (the October 15, 2010,

*Loudermill* hearing) and a post-termination hearing (the January 2011 School Board hearing). In

both instances, Plaintiff was provided notice of the charges against her. At the *Loudermill*

hearing, GMSD explained its evidence, and Plaintiff had an opportunity to present her side of the

story. There is no allegation in the Amended Complaint that the *Loudermill* hearing was

fundamentally inadequate.[18]   However, Plaintiff does claim GMSD improperly suspended her

without pay before the *Loudermill* hearing.  Am. Compl. ¶ 99.  As alleged, Plaintiff was

suspended with pay until October 1, 2010, when the original *Loudermill* hearing was scheduled.

However, because of scheduling conflicts, the *Loudermill* hearing was postponed until October

15, 2010.  Thereafter, GMSD changed Plaintiff's status for the period of October 1, 2010,

through October 15, 2010, to suspended without pay with the possibility of reimbursement if

Plaintiff prevailed at the hearing.  In Gilbert, the Supreme Court noted that "[s]o long as the

suspended employee receives a sufficiently prompt postsuspension hearing, the lost income is

relatively insubstantial (compared with termination)." 520 U.S. at 932; see also Morrissey v.

Brewer, 408 U.S. 471, 481 (1972) ("[D]ue process is flexible and calls for such procedural

protections as the particular situation demands.").  The two weeks of lost income alleged by

Plaintiff is relatively insubstantial, and Plaintiff could have recouped those losses had she

prevailed at her hearing.  Accordingly, I conclude that Plaintiff has not sufficiently alleged a due

process violation based on her suspended-without-pay status.

       Plaintiff has, however, sufficiently alleged that the January 2011 School Board

hearing was inadequate at law.  The School Board had up to ten days following the hearing to

make a determination.  Am. Compl. ¶ 117.  However, the School Board deliberated for only one

hour after the hearing before returning with a prepared statement explaining Plaintiff's

termination.  Id. ¶ 118.  The prepared statement, which included findings of fact and conclusions

---

[18] Plaintiff does claim that after the *Loudermill* hearing, the School District sent notice
with amended charges, and that she was thus entitled to a new *Loudermill* hearing.  However,
Plaintiff had an opportunity to address the amended charges at the formal termination hearings,
so there is no error for not having additional *Loudermill* hearings. See Gilbert, 520 U.S. at 929
(noting employee is only entitled to a limited pre-termination hearing).

of law, was the exact same document that was submitted to the School Board by GMSD's counsel prior to the hearing, with the only difference being the signatures at the end of the document. Id. ¶ 120; Pl.'s Resp. Br. Ex. A.  Additionally, Plaintiff alleges that the School Board allowed GMSD to admit into evidence e-mails between Plaintiff and her counsel that were partially redacted by GMSD, such that the viewable portions of the e-mails presented a deliberately misleading version of events.[19]  Am. Compl. ¶¶ 110–12.  On these facts, one might plausibly infer that the School Board did not hold the January 2011 hearing in good faith, and that the School Board made a pre-determined decision to terminate Plaintiff.  Therefore, I will allow Plaintiff's due process claim to proceed with respect to her post-termination hearing.[20]

---

[19] Plaintiff submitted three e-mails into evidence without redaction in order to show the "true" version of events, but the other e-mails remained in redacted form.  Am. Compl. ¶ 113.

[20] Municipal entities can be sued under 42 U.S.C. § 1983 ("Section 1983") where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 690 (1978).  In *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), the Supreme Court held that municipal liability may be found under Section 1983 "for a single decision by municipal policymakers," where those policymakers have "final authority to establish municipal policy with respect to the action ordered." Id. at 480–81.  School districts are municipal entities and political subdivisions for purposes of Section 1983. 1 PA. CONST. STAT. ANN. § 1991 (West 2012); Schlegel v. Koteski, 307 Fed. App'x 657, 658 n.1 (3d Cir. 2009); Febres v. Camden Bd. Of Educ., 445 F.3d 227, 229 (3d Cir. 2006); Gulf Ref. Co. v. Sch. Dist. of Phila., 167 A. 620, 620–21 (Pa. Super. Ct. 1933).
    As a result of my decision, *supra*, the only remaining constitutional claim in this matter is one for violation of due process at the January 2011 School Board hearing.  Thus, I must examine whether Plaintiff has sufficiently alleged that GMSD had a policy, practice, or custom which directly caused that alleged injury.  I find that Plaintiff has done so.  The School Board had final authority to terminate Plaintiff.  The School Board allegedly terminated Plaintiff in a pre-determined fashion, thus denying Plaintiff an adequate post-termination hearing.  I conclude this single decision is sufficient under *Monell*, *Pembaur*, and their progeny, to survive the instant motion.  Plaintiff's claim may proceed in this limited regard.

E.      **Claim for Punitive Damages**

Plaintiff seeks punitive damages.  Punitive damages are not recoverable from a municipality under § 1983.  <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981); <u>Bolden v. Se. Pa. Transp. Auth.</u>, 953 F.2d 807, 830 (3d Cir. 1991).   While a complaining party under Title VII may recover punitive damages for unlawful retaliation, such a remedy is available only against a party "other than a government, government agency or political subdivision."[21]  42 U.S.C. § 1981a(a)(1), (b)(1).  As discussed *supra*, GMSD is considered a political subdivision under Pennsylvania law.  As such, Plaintiff may not pursue punitive damages against GMSD under Title VII.[22]  Plaintiff's claim for punitive damages will be dismissed.

**V.      Discussion - Motion to Strike**

Defendant seeks to strike multiple paragraphs of the Amended Complaint for being redundant, immaterial, impertinent, and scandalous.  Because a plaintiff is generally free to be the master of her own complaint, a motion to strike is a powerful but generally disfavored remedy.  <u>See</u> <u>Metrokane, Inc. v. Wine Enthusiast</u>, 160 F. Supp. 2d 633, 641-42 (S.D.N.Y. 2001).  It is to be applied sparingly, and only in circumstances with truly scandalous allegations unnecessary to decision on the matters in question.  <u>See</u> 5C CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1382 (3d ed. 1998); <u>Magill v. Appalachia Intermediate</u>

---

[21] Plaintiff devotes almost her entire two-page argument on this issue in her reply brief to quoting the *syllabus* of *Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999), *again without quotation marks or citations*.  Pl.'s Resp. Br. 25-26.  *Kolstad*, although dealing with Title VII punitive damages and Section 1981a, concerns a private (<u>i.e.</u>, not municipal) entity defendant.  Plaintiff fails to mention the facial inapplicability of Section 1981a to political subdivisions.

[22] Moreover, punitive damages do not qualify as "equitable relief."  <u>Richerson v. Jones</u>, 551 F.2d 918, 927 (3d Cir. 1977).

<u>Unit 08</u>, 646 F. Supp. 339, 343 (W.D. Pa. 1986).

Paragraphs 16, 17, 18, 19, 20, 21, and 25 allege bigoted statements which Plaintiff purportedly heard Superintendent Weiss make about Coleman-Hill.  GMSD contends that "the only facts from the Coleman-Hill litigation that are relevant to the instant matter are that [Plaintiff] provided deposition testimony in Coleman-Hill's suit against [GMSD] and responded to an improperly issued subpoena prepared by Gray."  Def.'s Br. 34-35.  However, it is not improper for Plaintiff to include in the Amended Complaint allegations which, if true, might help to explain both why (1) Plaintiff objected to Weiss's remarks, and (2) Plaintiff provided deposition testimony in Coleman-Hill's favor.  Plaintiff should have the latitude to set forth alleged personal knowledge of what was said about and done to Coleman-Hill in order to show that Plaintiff had a good faith, reasonable belief motivating the actions that she maintains directly resulted in her mistreatment by GMSD.  <u>See</u> <u>Aman v. Cort Furniture Rental Corp.</u>, 85 F.3d 1074, 1085 (3d Cir. 1996) (good faith reasonable belief required for Title VII retaliation claim).  I find that GMSD is not overly prejudiced by Paragraphs 16, 17, 18, 19, 20, 21, and 25, and I conclude that these Paragraphs are not unduly scandalous given the issues involved in this matter.  I will therefore deny the Motion as to these Paragraphs.

Paragraphs 68 and 69 deal with Weiss's deposition in the Coleman-Hill case.  Weiss's deposition has no relevance to any of Plaintiff's claims (especially because the Amended Complaint does not allege that Plaintiff has personal knowledge of what happened in the deposition), and these Paragraphs bear undue risk of prejudice and confusion.  In short, the Court does not see a purpose for these Paragraphs other than portraying Weiss in a personally negative light.  In my discretion, I will strike Paragraphs 68 and 69.

Paragraph 115 is poorly worded.  Defendant argues that it suggests GMSD generally ignored a federal court decision, and that such purpose is irrelevant and scandalous. However, a more nuanced reading of the Paragraph could be that the School Board did not take into account a particular federal court decision specifically during Plaintiff's post-termination hearing.  This latter meaning would be relevant because it goes to the claim that the post-termination hearing was not held in good faith.  Because Plaintiff's due process claim remains as to the post-termination  hearing, I will allow Paragraph 115 to remain.

## VI.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Portions of Plaintiff's Amended Complaint and to Strike Portions Thereof will be granted in part and denied in part.  An appropriate Order follows.